**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TIRISH HARRISON | ) | CASE NO. |
| 529 Erickson Avenue | ) | |
| Columbus, Ohio 43213, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| AMERATHON, LLC | ) | |
| 8100 Ravines Edge Court | ) | **JURY DEMAND ENDORSED** |
| Columbus, Ohio 43235 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| Amerathon, LLC | ) | |
| c/o Corporation Service Company | ) | |
| 50 West Broad Street, Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Tirish Harrison, by and through undersigned counsel, as her Complaint against

Defendant Amerathon, LLC ("Amerathon"), states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Harrison is a resident of the city of Columbus, Franklin County, Ohio.

2. At all times herein, Harrison was acting in the course and scope of her employment.

3. Amerathon is a foreign limited liability company that does business at 8100 Ravines Edge

   Court, Columbus, Franklin County, Ohio 43235.

4. Amerathon is and, at all times herein, was an employer within the meaning of R.C. § 4112.01

   *et seq.*

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Harrison is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

6. All material events alleged in this Complaint occurred in Franklin County, Ohio.

7. This Court has supplemental jurisdiction over Harrison's state law claims pursuant to 28 U.S.C. § 1367 as Harrison's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Harrison filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00490 against Amerathon ("Harrison EEOC Charge").

10. On or about December 30, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Harrison regarding the Charges of Discrimination brought by Harrison against Amerathon in the Harrison EEOC Charge.

11. Harrison received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Harrison has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Harrison has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

14. Harrison is a former employee of Amerathon.

2

15. In or about April 2019, Harrison began working for Amerathon.

16. Amerathon employed Harrison as a phlebotomist.

17. At all times herein, Harrison was qualified for the position of phlebotomist.

18. Amerathon was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

19. As of April 2020, Harrison was employed by Amerathon for at least 12 months and had at least 1,250 hours of service with Amerathon and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

20. Harrison has asthma, diabetes, and heart palpitations ("Harrison's Conditions").

21. Harrison's Conditions place her at a heightened risk of developing a severe case of COVID-19.

22. Harrison's Conditions place her at a heightened risk of dying from COVID-19.

23. In or about April 2019, Harrison informed Tammy Jacobs about Harrison's Conditions.

24. Jacobs was phlebotomy supervisor for Amerathon.

25. In or about April 2019, Harrison informed Victoria Wise about Harrison's Conditions.

26. Wise was district manager for Amerathon.

27. In or about April 2019, Harrison informed Adrian Diggs about Harrison's Conditions.

28. Diggs was phlebotomy team lead for Amerathon.

29. Harrison's Conditions are physical impairments.

30. Harrison's Conditions significantly limit her in one or more major life activities.

31. Because of Harrison's Conditions, Harrison has a record of physical impairment.

3

32. Amerathon perceived Harrison as disabled.

33. Harrison is disabled within the meaning of R.C. § 4112.01 *et seq.*

34. Harrison is disabled within the meaning of ADA.

35. On or about March 9, 2020, Ohio Governor Mike DeWine signed Executive Order 2020-01D, declaring a state of emergency due to the COVID-19 pandemic.

36. In or about March 2020, Harrison informed Jacobs that Harrison's Conditions place her at heightened risk of developing a severe case of COVID-19.

37. In or about March 2020, Harrison informed Jacobs that Harrison's Conditions place her at heightened risk of dying from COVID-19.

38. In or about March 2020, Harrison informed Wise that Harrison's Conditions place her at heightened risk of developing a severe case of COVID-19.

39. In or about March 2020, Harrison informed Wise that Harrison's Conditions place her at heightened risk of dying from COVID-19.

40. In or about March 2020, Harrison informed Diggs that Harrison's Conditions place her at heightened risk of developing a severe case of COVID-19.

41. In or about March 2020, Harrison informed Diggs that Harrison's Conditions place her at heightened risk of dying from COVID-19.

42. The duties of Harrison's job included traveling to medical facilities to draw patients' blood.

43. The duties of Harrison's job included traveling to nursing homes to draw patients' blood.

44. In March 2020, Amerathon did not provide phlebotomists with gowns.

45. In March 2020, Amerathon did not provide phlebotomists with N-95 masks.

46. In March 2020, Amerathon did not provide phlebotomists with face shields.

47. In March 2020, Amerathon did not provide phlebotomists with goggles.

48. Hereinafter, gowns, N-95 masks, face shields, and goggles are collectively called "personal protective equipment" or "PPE."

49. Providing employees with PPE reduces the risk of spreading COVID-19.

50. Failing to provide phlebotomists with PPE creates an unsafe work environment.

51. Phlebotomists have a high risk of exposure to the coronavirus.

52. People who work in nursing homes have a high risk of exposure to the coronavirus.

53. In or about March 2020, Harrison told Jacobs that Harrison needed PPE in order to do her job safely ("First PPE Request").

54. Harrison made the First PPE Request because of Harrison's Conditions.

55. Jacobs knew that Harrison made the First PPE Request because of Harrison's Conditions.

56. The First PPE Request was a request for disability accommodation.

57. Amerathon denied the First PPE Request.

58. Amerathon did not engage in the interactive process to determine whether a reasonable accommodation was available.

59. Amerathon did not engage in the interactive process to determine whether Harrison needed an accommodation.

60. Amerathon's failure to provide Harrison with PPE was an adverse employment action.

61. On or about May 15, 2020, Jacobs instructed Harrison to go to a location known as Buckeye Terrace.

62. Buckeye Terrace is a nursing home.

63. Buckeye Terrace did not provide phlebotomists with PPE.

64. Buckeye Terrace did not provide Harrison with PPE.

65. On or about May 15, 2020, Harrison informed Jacobs that Buckeye Terrace did not provide her with PPE.

66. On or about May 15, 2020, Harrison asked Jacobs for Amerathon to provide her with PPE for her work at Buckeye Terrace.

67. On or about May 15, 2020, Harrison asked Jacobs for Amerathon to excuse her from working at Buckeye Terrace.

68. Hereinafter, Paragraphs 66 and 67 are collectively called the "Second Request for Accommodation."

69. Harrison made the Second Request for Accommodation because of Harrison's Conditions.

70. Jacobs knew that Harrison made the Second Request for Accommodation because of Harrison's Conditions.

71. Harrison made the Second Request for Accommodation because working at Buckeye Terrace without PPE would create an unsafe work environment for Harrison.

72. Jacobs knew that Harrison made the Second Request for Accommodation because working at Buckeye Terrace without PPE would create an unsafe work environment for Harrison.

73. On or about May 18, 2020, Harrison's doctor ordered her to take leave from work due to Harrison's Conditions.

74. On or about May 18, 2020, Harrison qualified for FMLA leave.

75. On or about May 18, 2020, Harrison's doctor sent to Amerathon, via fax, a note requesting for Harrison to take leave from work ("First FMLA Request").

76. On or about May 18, 2020, Amerathon approved the First FMLA Request.

77. On or about June 8, 2020, Harrison returned to work.

78. On or about June 13, 2020, at 3:08 p.m., Harrison informed Jacobs via text message that she had doctors' appointments on June 16, June 17, and June 18, 2020 ("Second FMLA Request").

79. Hereinafter, Harrison's doctor's appointment on June 16, 2020, is called the "Tuesday Appointment."

80. Hereinafter, Harrison's doctor's appointment on June 17, 2020, is called the "Wednesday Appointment."

81. Hereinafter, Harrison's doctor's appointment on June 18, 2020, is called the "Thursday Appointment."

82. In the Second FMLA Request, Harrison requested for Jacobs not to schedule her for shifts that would conflict with her doctors' appointments.

83. On or about June 13, 2020, at 3:11 p.m., Jacobs instructed Harrison via text message to go to Buckeye Terrace during her shifts that week.

84. On or about June 13, 2020, at 3:16 p.m., Harrison wrote to Jacobs via text message, "I'm too high risk to go into there [sic] covid unit. I didn't have proper ppe and was still told by you I had to do it" ("Third Request for Accommodation").

85. In the Third Request for Accommodation, Harrison requested not to be required to go to Buckeye Terrace.

86. The Third Request for Accommodation was a request for disability accommodation.

87. Jacobs understood that the phrase "I'm too high risk" in the Third Request for Accommodation referred to Harrison's Conditions.

88. Harrison made the Third Request for Accommodation because of Harrison's Conditions.

89. Jacobs knew that Harrison made the Third Request for Accommodation because of Harrison's Conditions.

90. The Third Request for Accommodation was reasonable.

91. Jacobs denied the Third Request for Accommodation.

92. Jacobs did not engage in the interactive process to determine whether a reasonable accommodation was available.

93. Jacobs did not engage in the interactive process to determine whether Harrison needed an accommodation.

94. On or about June 16, 2020, Harrison attended the Tuesday Appointment.

95. At the Tuesday Appointment, Harrison's doctor attached a heart monitor to Harrison.

96. The purpose of the Wednesday Appointment was to follow up on the Tuesday Appointment.

97. On or about June 16, 2020, at 4:06 p.m., Diggs informed Harrison via text message that Harrison's schedule was changed for the following day.

98. On or about June 16, 2020, at 4:24 p.m., Harrison told Diggs via text message, "No please don't change my schedule I have route planned according to dr appt" [sic].

99. On or about June 16, 2020, at 10:39 p.m., Diggs sent Harrison her schedule for June 17, 2020 ("Schedule").

100. The Schedule included a full day's work.

101. The Schedule did not account for Harrison's scheduled doctor's appointment.

102. On or about June 17, 2020, at 2:32 a.m., Harrison told Diggs via text message, "I have to call off for today I can't miss my appointment" ("Call-Off Text").

103. Amerathon interfered with Harrison's use of FMLA leave.

104. Amerathon failed to accommodate Harrison's disabilities.

105. Amerathon failed to furnish a safe work environment for Harrison.

106. On or about June 17, 2020, Amerathon terminated Harrison's employment.

8

107. On or about June 17, 2020, Amerathon terminated Harrison's employment in order to interfere with her use of FMLA leave.

108. On or about June 17, 2020, Amerathon terminated Harrison's employment in retaliation for her use of qualified FMLA leave.

109. On or about June 17, 2020, Amerathon terminated Harrison's employment because of her disabilities.

110. On or about June 17, 2020, Amerathon terminated Harrison's employment because of her perceived disabilities.

111. On or about June 17, 2020, Amerathon terminated Harrison's employment because she complained about unsafe working conditions.

112. On or about June 17, 2020, Amerathon terminated Harrison's employment because she complained about practices that risked spreading COVID-19.

113. As a direct and proximate result of Amerathon's conduct, Harrison suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: FAILURE TO ACCOMMODATE UNDER ADA

114. Harrison informed Amerathon of her disabling condition.

115. Harrison requested accommodations from Amerathon to assist with her disabilities.

116. Harrison's requested accommodations were reasonable.

117. There was an accommodation available that would have been effective and would have not posed an undue hardship to Amerathon.

118. Amerathon failed to engage in the interactive process of determining whether Harrison needed an accommodation.

119. Amerathon failed to provide an accommodation.

120. On or about June 17, 2020, Amerathon terminated Harrison's employment because of her disabilities.

121. On or about June 17, 2020, Amerathon terminated Harrison's employment because of her perceived disabilities.

122. As a direct and proximate result of Amerathon's conduct, Harrison suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 *et seq.*

123. Harrison informed Amerathon of her disabling condition.

124. Harrison requested accommodations from Amerathon to assist with her disabilities.

125. Harrison's requested accommodations were reasonable.

126. There was an accommodation available that would have been effective and would have not posed an undue hardship to Amerathon.

127. Amerathon failed to engage in the interactive process of determining whether Harrison needed an accommodation.

128. Amerathon failed to provide an accommodation.

129. Amerathon violated R.C. § 4112.02 by failing to provide Harrison a reasonable accommodation.

130. On or about June 17, 2020, Amerathon terminated Harrison's employment because of her disabilities.

131. On or about June 17, 2020, Amerathon terminated Harrison's employment because of her perceived disabilities.

132. As a direct and proximate result of Amerathon's conduct, Harrison suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

133. Harrison restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

135. Amerathon is a covered employer under FMLA.

136. During her employment, Harrison qualified for FMLA leave.

137. During her employment, Harrison attempted to request FMLA leave.

138. Amerathon failed to advise Harrison of her rights under FMLA.

139. Amerathon unlawfully interfered with Harrison's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

140. Amerathon violated section 825.300(c)(1) of FMLA and interfered with Harrison's FMLA rights when Amerathon did not honor Harrison's approved use of FMLA leave.

141. Harrison is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IV: RETALIATION IN VIOLATION OF FMLA

142. Harrison restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

143. During her employment, Harrison utilized FMLA leave.

144. After Harrison utilized her qualified FMLA leave, Amerathon retaliated against her.

145. Amerathon retaliated against Harrison by terminating her employment.

146. Amerathon willfully retaliated against Harrison in violation of 29 U.S.C. § 2615(a).

147. As a direct and proximate result of Amerathon's wrongful conduct, Harrison is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

148. Harrison restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, including R.C. §§ 4101.11 and 4101.12, or in the common law, requiring employers to furnish a safe environment for employees and frequenters.

150. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

151. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, including Ohio Executive Order 2020-01D, or in the common law, against spreading COVID-19.

152. Amerathon's termination of Harrison jeopardizes these public policies.

153. Amerathon's termination of Harrison was motivated by conduct related to these public policies.

154. Amerathon had no overriding business justification for terminating Harrison.

155. As a direct and proximate result of Amerathon's conduct, Harrison has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Harrison respectfully requests that this Honorable Court grant the

following relief:

(a) Issue an order requiring Amerathon retroactively to restore Harrison to one of the positions
to which she was entitled by virtue of her application and qualifications, and expunge her
personnel file of all negative documentation;

(b) An award against Amerathon of compensatory and monetary damages to compensate
Harrison for physical injury, physical sickness, lost wages, emotional distress, and other
consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Amerathon in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Harrison's claims as
allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Tirish Harrison*

13

## JURY DEMAND

Plaintiff Harrison demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)